UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| NICHOLAS CRUZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-11-205 |
| | § | |
| CITY OF GALVESTON, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court is the defendant, the City of Galveston's, motion for summary judgment (Doc. No. 34) and the plaintiff, Nicholas Cruz's, response to the City's motion (Doc. No. 39). Also before the Court are the various attachments to the parties' pleadings and the City's reply (Doc. No. 45). The Court, being fully advised, is of the opinion that the City's motion for summary judgment should be granted.

### II.   FACTUAL BACKGROUND

Except for the facts surrounding how the plaintiff was handled by officer Robert Sanderson, the relevant facts are essentially undisputed. The plaintiff supplied music from his pick-up truck at a friend's party on or about March 21, 2010. Apparently, the music volume that was provided by another attendee was insufficient due to the size of his speakers. The plaintiff had installed custom speakers, therefore, his speakers were capable of producing a greater volume. Around 7:34 p.m., a neighbor called in a complaint that the music coming from one of the pick-ups was too loud. According to the plaintiff, the vehicle was identified as a white Ford truck. A second loud noise complaint was called in around 8:22 p.m. Officer Stanley answered the call on both complaints, and on the first visit, gave a verbal warning to the host and her guest.

However, on the second visit he issued a ticket to the plaintiff because of the noise level. Although the plaintiff complained that he had not been warned previously, he accepted the citation and, according to him, lowered the volume on the music. A third complaint was called in around 8:57 p.m., and a different officer, officer Sanderson responded to the call. He approached the host and informed her of the complaint and specifically sought the plaintiff out since the plaintiff had already been issued a citation for loud music.

Officer Sanderson invited the plaintiff to his vehicle to talk. The plaintiff stated that he was doing nothing wrong and refused to follow officer Sanderson. Officer Sanderson grabbed the plaintiff by the arm to escort him to his car as the plaintiff began to walk away. Officer Sanderson then told the plaintiff that he was under arrest. Instead of following officer Sanderson, the plaintiff grabbed hold of a vehicle and refused to submit to an arrest. Efforts to apply wrist restraints were unsuccessful. When the plaintiff refused to release the vehicle, officer Sanderson struck the plaintiff in his abdominal area several times. However, the plaintiff refused to release his grasp. Officer Sanderson then forced the plaintiff to the ground by "deploying knee strikes to the [plaintiff's] abdominal area." He was held on the ground by officer Sanderson until another officer arrived, at which time the plaintiff was handcuffed.

According to the plaintiff, when officer Sanderson told him that he was under arrest, he began to drag the plaintiff off the property toward the street. The plaintiff contends that officer Sanderson choked him, struck various parts of his body, including his private parts, and threw him against a truck and caused him to strike his face against the cement driveway. He contends that another officer, who arrived at the scene shortly after the plaintiff was down, put his knee on his neck while he was face-down and being handcuffed. Resisting arrest charges were filed but were eventually dismissed. Thereafter, the plaintiff filed his suit against the City.

## III.  CONTENTIONS OF THE PARTIES

### A.  *The Plaintiff's Contentions*

The plaintiff asserts that the City violated his Fourth Amendment right to be free from the use of excessive force by its police officers.  In this regard, the plaintiff contends that the City condones the use of tactics by its police officers that are unconstitutional and violative of the Fourth Amendment to the federal Constitution.  The plaintiff contends that: (a) the police department has a long history of police brutality; (b) this history establishes a pattern of conduct, through tolerance, that constitutes an adoption of a policy and/or custom by the City; (c) the City's police officers are inadequately trained, inadequately supervised, disciplined, monitored, and managed; (d) the City fails to adequately screen candidates before hiring them; and (e) the City's conduct and omissions in these respects have resulted in constitutional violations of the plaintiff and others.

In response to the defendant's motion for summary judgment, the plaintiff summarizes his suit in three claims:  (1) the City, through its police officers, and acting under color of law, violated his Fourth Amendment rights by the use of excessive force; (2) the City tolerates unconstitutional conduct on the part of its police officers as a result of a policy, custom, or practice in violation of its duty to discipline and punish officers for the use of excessive force; and (3) the City, although aware of its officers' conduct, has failed to adequately train, supervise and hire officers who will protect the Fourth Amendment rights of its citizens.

### B.  *The Defendant's Contentions*

The City asserts that it is entitled to summary judgment because the evidence presented does not favor or support the plaintiff's claim that the City subjected him to a use of excessive

force. Specifically, the City argues that the plaintiff: (a) cannot and does not identify a policy or custom adopted by the City that supports the use of excessive force; (b) cannot connect any alleged unconstitutional policy or custom to the City; and (c) cannot show a specific constitutional injury suffered because of the execution of a particular policy or custom by the City. In support of its position, the City points to the burden of proof that rests on the plaintiff's shoulders as taught by *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.) (*en banc*), *cert. denied*, 472 U.S. 1016 (1985); *Snyder v. Frepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Finally, in its reply to the plaintiff's response, the City refers the Court and the plaintiff to *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009), as a case with facts that somewhat parallel those that the plaintiff asserts as the basis for his suit.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props. Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-325)). Once the movant caries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. See *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant

may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)(quoting *Anderson*, 477 U.S. at 251-252).

If the moving party pleads in good faith that it is entitled to absolute or qualified immunity, "the burden shifts to the plaintiff to rebut it." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (internal citations omitted). Thus, "[t]he burden is on a plaintiff to overcome a defendant's defense of qualified immunity. *Burnes-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

**V.     ANALYSIS & DISCUSSION**

   *A.     The Constitutional Violation Analysis*

Section 42 U.S.C. § 1983 "imposes liability upon 'every person' who, under color of state law or custom, 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Owen v. City of Independence, Missouri,* 445 U.S. 622, 635 (1980); *see also Piotrowski v. City of*

*Houston*, 51 F.3d 512, 515 (5th Cir. 1995). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). In this case, the plaintiff argues that he was deprived of his Fourth Amendment right "to be secure . . . against unreasonable seizures." *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").

Applying *Graham*, the Fifth Circuit has held that, to prevail on a § 1983 excessive force claim, a plaintiff must show: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999) (internal citations omitted). This case involves an alleged injury that resulted directly and only from the use of force. The question that remains is whether the force used was clearly excessive and objectively unreasonable. *See Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991). Another question is whether the conduct of the officer can be traced to a policy or custom adopted by the City.

Determining whether an officer's use of force is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). Even though the Court considers the evidence in the light most favorable to the plaintiff, the reasonableness of the use of force is to be judged "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 at 396 (citing *Terry v.*

*Ohio*, 392 U.S. 1, 20-22 (1968)); *see also Ballard v. Burton*, 444 F.3d 391, 402-03 (5th Cir. 2006).

The Court must allow for the fact that "police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation. *Graham*, 490 U.S. at 397. In this instance, the officers' underlying intent or motivation is irrelevant because "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting [him]." *Id.* (internal quotations omitted); *see also Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997). Therefore, the question of whether officer Sanderson's use of force was reasonable turns on whether the events occurred in the way the defendant describes them. After careful consideration of the record and arguments presented by the parties, the Court concludes that the plaintiff has failed to provide evidence sufficient to establish a genuine issue of material fact, for jury consideration, as to how the events occurred.

### B.     *Individual Officer Liability*

It appears that the plaintiff required that officer Sanderson conduct at least a "cursory investigation to see if [he] increased the volume of his radio "before seizing him and attempting to place him under arrest." This position overlooks the undisputed facts that third and fourth noise complaints were called in after the plaintiff was issued a citation for loud noise. The facts show that the plaintiff was "grabbed" only after officer Sanderson spoke to the host and requested that she point out the owner of the vehicle that was the subject of the latest complaint. The plaintiff acknowledges that officer Sanderson told him to follow him to his vehicle and that he was being arrested. In the process, the plaintiff claims that officer Sanderson choked him, punched him, and threw him against a truck and to the ground. However, it is apparent that the

plaintiff was resisting arrest. The plaintiff does not dispute officer Sanderson's report that he was resisting arrest and that he grabbed hold of a vehicle while refusing to cooperate. Instead, he simply describes the tactics used by officer Sanderson and other officers in their efforts to effect an arrest.

The plaintiff also asserts that he did not pose a threat to officer Sanderson, that he did not attack him or threaten him before he was grabbed. As well, the plaintiff contends, the incident was not an emergency situation that required the use of force. Assuming that the plaintiff is correct, that the severity of the crime and the fact that no immediate threat to officer's safety existed, the facts, nevertheless, show that the plaintiff actively resisted the arresting officer, thereby creating an emergency that threatened the officer himself. The fact that the crime charged was a misdemeanor is but one factor in the *Graham* analysis. *See Graham*, 490 U.S. at 396. When officer Sanderson decided to arrest the plaintiff, whether a "good or necessary" decision, he was authorized to use such force as necessary to effect the arrest. In other words, the plaintiff had no right to resist the arrest, whether lawful or not. *See Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 656 (5th Cir. 2004).

The evidence shows further that as officer Sanderson attempted to remove the plaintiff to the street where he could be arrested, the guests at the party gathered around and one of the guests approached and interfered during the arrest. The plaintiff does not dispute these facts. Nor does the plaintiff point to any act committed by officer Sanderson that was not committed in an attempt to subdue and arrest him. Moreover, the plaintiff does not point to any injury that he received beyond those suffered as a result of his resistance during the arrest. Because the evidence shows that the force to carry out the arrest did not exceed that force necessary to effect it, the Court finds and holds that the force applied by officer Sanderson during the arrest did not

constitute a use of excessive force in violation of the Fourth Amendment. *See Graham*, 490 U.S. at 396-97.

### C. *Qualified Immunity Analysis*

Because the Court finds that officer Sanderson's actions did not violate a constitutional right, it need not determine whether officer Sanderson is entitled to qualified immunity. S*aucier v. Kotz*, 533 U.S. 194, 2001 ("[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity") (overruled and abrogated on other grounds). Nevertheless, if officer Sanderson's actions could be construed as constituting a constitutional violation, the Court finds that he is entitled to qualified immunity.

### D. *Municipal Liability*

The evidence also fails to support the view that the City adopted a custom or practice that permitted officer Sanderson to violate the Fourth Amendment. In this regard, the plaintiff claims that the City turns "a blind eye to unconstitutional conduct." In his fourth amended complaint, the plaintiff reports that the City's police department routinely uses unconstitutional tactics in making arrests. He points to media reports that he claims "document over fifty (50) incidents of police brutality and misconduct[] during the past seven (7) years."

These reports cannot establish a pattern of misconduct, as each alleged incident rests in its own unique facts. In fact, the plaintiff admits that the police department has "specific" standards which were clearly not complied with by officer Sanderson . . . and the supervising officers. This admission establishes that the City's policy, concerning arrests and police conduct, is different than that complained about by the plaintiff. Therefore, each arrest or allegation of unconstitutional conduct must be judged on its own facts. *See McKee v. City of Rockwall*, 877

F.2d 409, 415-16 (5th Cir.), *cert. denied*, 493 U.S. 1023 (1990); *see also Bennett*, 728 F.2d at 767. Because the facts fail to establish a use of excessive force and because the plaintiff cannot point to a policy or custom promulgated by the City that permits an unconstitutional use of force, the defendant's motion for summary judgment is granted. *See Monell*, 436 U.S. at 694.

## VI. CONCLUSION

The Court finds that officer Sanderson's use of force was not unreasonable under the circumstances and did not result in an unconstitutional violation. Even if officer Sanderson's use of force could be construed as an unconstitutional violation, he would be entitled to qualified immunity. Moreover, there is no evidence that his conduct was pursuant to an unconstitutional policy or custom adopted by the City. Therefore, the City's motion for summary judgment is **GRANTED** and this case is **DISMISSED**.

It is so **ORDERED**.

SIGNED at Houston, Texas this 29th day of June, 2012.

_____
Kenneth M. Hoyt
United States District Judge